UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFERY LEONARD,

                    Plaintiff,

        v.

THE BOEING COMPANY, INC.,

                    Defendant.

CASE NO. C25-1551JLR

ORDER

## I.    INTRODUCTION

Before the court are (1) Defendant The Boeing Company, Inc.'s ("Boeing") motion to dismiss Plaintiff Jeffery Leonard's class action complaint (MTD (Dkt. # 11); MTD Reply (Dkt. # 30)); (2) Boeing's motion for judicial notice (MJN (Dkt. # 12); MJN Reply (Dkt. # 29)); and (3) Mr. Leonard's motion to remand (MTR (Dkt. # 19); MTR Reply (Dkt. # 28)).  Each party opposes the other's motions.  (MTD Resp. (Dkt. # 24); MJN Resp. (Dkt. # 25); MTR Resp. (Dkt. # 21).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully

ORDER - 1

advised,[1] the court GRANTS Mr. Leonard's motion to remand; GRANTS in part Boeing's motion for judicial notice; and DENIES Boeing's motion to dismiss as moot.

## II.    BACKGROUND

This matter arises from the inclusion of an allegedly discriminatory ratification bonus in the most recent collective bargaining agreement ("CBA") between Boeing and the International Association of Machinists and Aerospace Workers, AFL-CIO ("IAMAW").  (*See generally* Compl. (Dkt. # 1-2).)  The court sets forth the relevant factual and procedural background of this case below.

**A.    Factual Background**

On September 12, 2024, after a contentious negotiation process and a lengthy strike, Boeing and the IAMAW reached an agreement on the renegotiation of their CBA. (Compl. ¶ 16.)  As part of the agreement, Boeing committed to paying a $12,000 bonus to most workers covered by the CBA as long as the new CBA was ratified before November 4, 2024, at 11:59 p.m.  (*Id.* ¶ 17.)  Employees covered by the CBA were entitled to the $12,000 bonus as long as they were

> on (a) the active payroll on September 12, 2024 (including a leave of absence of ninety (90) days or less) or (b) approved military leave of absence on September 12, 2024 pursuant to Section 6.6(b) [of the CBA], even if such military leave of absence is longer than ninety (90) days and (c) for those employees not on leave of absence, returned to work [after the strike] by no later than November 12, 2024. [2]

---

[1] Although the parties request oral argument, the court concludes that oral argument would not assist it in resolving the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Mr. Leonard refers to the conditions entitling an employee to the ratification bonus as the "Exclusionary Bonus Policy."  (*See, e.g.*, Compl. ¶ 2.)

ORDER - 2

(MJN, Ex. 1 ("2024 CBA"[3]) at 180 ("Letter of Understanding No. 32"); *see* Compl. ¶ 19.) "On the active payroll" as used in the CBA is defined as "actively engaged in the workforce." (*See* MJN, Ex. 2 (*IAMAW Dist. Lodge 751 v. The Boeing Co.*, Arb. Award, Lindauer, Eric B. (Jan. 18, 2008)[4] ("Lindauer Award")) at 10.) A majority of the covered employees voted to ratify the new CBA before the deadline, thus entitling eligible employees to the ratification bonus. (Compl. ¶ 18.)

Mr. Leonard, who has worked for Boeing since 2012, was covered by the CBA and voted to ratify the new CBA. (*Id.* ¶¶ 7(a), 18.) On September 12, 2024, however, Mr. Leonard was on a disability-related leave of absence lasting more than 90 days. (*Id.* ¶¶ 7(b), 20.) As a result, he did not receive the $12,000 ratification bonus. (*Id.* ¶ 20.)

Mr. Leonard asserts that Boeing's exclusion of employees on disability leaves of greater than 90 days constitutes (1) disparate treatment and disparate impact discrimination on the basis of disability in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60.180, and (2) retaliation for taking disability-related leave or requesting disability accommodation in violation of the WLAD, RCW 49.60.210. (*Id.* ¶¶ 31-48.) He seeks to bring these claims on behalf of a class that

> [c]onsists of all Boeing employees in Washington who were covered by the CBA and were denied the $12,000 ratification bonus under Boeing's

---

[3] The court grants Boeing's unopposed request to take judicial notice of the 2024 CBA. (*See* MJN at 1-2; MJN Resp. at 1.)

[4] The court grants Boeing's unopposed request to take judicial notice of the Lindauer Award. (*See* MJN at 1-2; MJN Resp. at 1.) The court denies Boeing's opposed requests for judicial notice because it did not refer to them in deciding the motions.

ORDER - 3

Exclusionary Bonus Policy because they were on a leave of absence of more than 90 days due to a disability.

(Compl. ¶ 23.)  Mr. Leonard alleges that approximately 1.15% of the 30,000 Washington employees covered by the CBA—or "roughly 350 individuals"—did not receive the ratification bonus solely because they were on disability-related leaves of greater than 90 days as of September 12, 2024.  (*Id.* ¶¶ 15, 20, 24.)  According to Boeing, however, "there at least 174 individuals who, taking the allegations in [Mr.] Leonard's Complaint at face value, worked in Washington and appear to meet the class definition[.]" (10/24/25 Semone Decl. (Dkt. # 23) ¶ 3.)

**B.      Procedural Background**

Mr. Leonard filed his proposed class-action complaint in King County Superior Court on July 21, 2025.  (*See id.* at 1.)  Boeing removed the matter to this court on August 14, 2025, asserting diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and federal question jurisdiction on the basis of preemption under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (*See* Not. of Removal (Dkt. # 1).)  It filed its motions to dismiss and for judicial notice on August 21, 2025.  (*See* MTD; MJN.)

On September 4, 2025, Mr. Leonard moved to stay these proceedings pending the resolution of a motion to remand that he intended to file by October 3, 2025.  (MTS (Dkt. # 14).)  The court denied the motion to stay; ordered Mr. Leonard to file his motion to remand by October 3, 2025; and set a briefing schedule for the parties' motions.  (9/29/25 Order (Dkt. # 18).)  Mr. Leonard timely filed his motion to remand, and the parties timely

ORDER - 4

filed their responses and replies in accordance with the court's order.  (*See generally* Dkt.)  The motions are now ripe for decision.

### III.    ANALYSIS

Mr. Leonard asserts that the court must remand this case to state court because (1) the court lacks CAFA jurisdiction and (2) his WLAD claims are not preempted under LMRA § 301.  (*See generally* MTR.)  Boeing argues that both bases for removal are valid.  (*See generally* MTR Resp.)  As discussed below, the court concludes that it lacks subject matter jurisdiction over this action and therefore grants Mr. Leonard's motion to remand.

**A.    CAFA Jurisdiction**

CAFA authorizes subject matter jurisdiction over class actions in which the amount in controversy exceeds $5 million, exclusive of interest and costs; the proposed class has at least 100 members; and minimal diversity exists between any plaintiff and any defendant.  28 U.S.C. § 1332(d)(1), (2), (5).  Mr. Leonard argues that Boeing cannot invoke CAFA jurisdiction because it has failed to establish the requisite amount in controversy.[5]  (MTR at 5-12.)  The court agrees with Mr. Leonard.

    1.    Legal Standard

Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in

---

[5] Although Mr. Leonard originally challenged Boeing's ability to establish the requisite class size, he has since conceded that Boeing satisfied that requirement.  (MTR Reply at 6-7.)

controversy exceeds the jurisdictional threshold." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962-63 (9th Cir. 2020) (quoting *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018)). The amount in controversy is the amount at stake in the litigation and can include damages, the costs of complying with an injunction, and attorneys' fees awarded under a fee-shifting statute or contract. *Fritsch*, 899 F.3d at 793.

There is no presumption against removal under CAFA as there is for a typical removal of a state court case on diversity grounds. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[,]" and need not contain evidentiary submissions. *Id.* at 89 (citing 28 U.S.C. 1446(a)). But "[e]vidence establishing the amount is required" where, as here, the plaintiff contests the defendant's allegation of the amount in controversy. *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)).

"[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc*, 775 F.3d 1193, 1197 (9th Cir. 2015). The defendant may, however, "rely on reasonable assumptions to prove that it has met the statutory threshold." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) (citation omitted). The "assumptions cannot be pulled from thin air but [rather] need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. "[T]he burden of demonstrating the reasonableness of the assumptions . . . remain[s] at all times with [the defendant]." *Harris*, 980 F.3d at 701.

### 2.    Facial Attack vs. Factual Attack

Boeing argues that it can rely solely on the allegations in Mr. Leonard's complaint to calculate the amount in controversy because Mr. Leonard raises only a facial attack on Boeing's allegation that the amount in controversy exceeds the jurisdictional threshold. (MTR Resp. at 16-18.)  The court disagrees.

A challenge to a defendant's assertion of the amount in controversy can be facial or factual.  *See Harris*, 980 F.3d at 699.  "A facial attack accepts the truth of the [defendant's jurisdictional] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction[;]" in contrast, a "factual attack contests the truth of the . . . allegations themselves."  *Id.* (internal citations and quotation marks omitted).  "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."  *Id.* (citations omitted).

Here, Mr. Leonard does not accept the truth of Boeing's jurisdictional allegations. (*See* MTR at 3-12; *see also* MTR Reply at 5-11 (clarifying his factual challenges).) Instead, he argues that Boeing's calculations of the components of the amount in controversy "rest on false assumptions" that make its estimates of damages, the value of injunctive relief, and attorneys' fees speculative.  (MTR at 5-11, 23.)  Because Mr. Leonard disputes the truth of Boeing's allegations, his attack is factual rather than facial. Therefore, Boeing must establish by a preponderance of the evidence that the amount in controversy exceeds $5 million.  *Harris*, 980 F.3d at 699.

ORDER - 7

### 3.    Economic and Noneconomic Damages

In its notice of removal, Boeing asserted that the damages at issue in this case total $5.95 million, comprising (1) $4.2 million in economic damages, based on multiplying the $12,000 bonus by Mr. Leonard's estimated class size of 350 employees (*see* Compl. ¶ 24), and (2) $1.75 million in noneconomic damages under the WLAD, based on multiplying an estimated $5,000 in emotional distress damages per class member by 350. (*See* Not. of Removal ¶¶ 23-25.)  Mr. Leonard contends that (1) Boeing's evidence that the class includes 174 members—rather than 350—governs the damages calculation because he makes a factual challenge to Boeing's calculation of damages, and (2) the amount in controversy does not include emotional distress damages because he does not seek such damages as a remedy.  (MTR at 6-7.)  Boeing does not respond to Mr. Leonard's assertion that the court should not consider noneconomic damages, and thus it has waived that argument.  (*See generally* MTR Resp.); *see Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citations and quotations omitted).  Boeing contends, however, that the amount of damages must based on the 350-member class alleged in the complaint.  (MTR Resp. at 19-20.)

The court agrees with Mr. Leonard that the calculation of economic damages must be based on Boeing's evidence that the class includes 174 members.  Mr. Leonard argues that the "roughly 350" member class size he alleged in his complaint was a loose estimate

based on incomplete information.  (MTR at 3-4.)  He further asserts that Boeing has "perfect information" about how many employees were denied the bonus because they were on a leave of absence of more than 90 days due to a disability but failed to provide it with its notice of removal.  (*Id.* at 5 (citing Compl. ¶ 23).)  This is a factual challenge to Boeing's jurisdictional allegations regarding class size and damages.  *See Harris*, 980 F.3d at 699.

In response to Mr. Leonard's factual challenge to the class size, Boeing provided evidence, based on a review of its records, that the class has "at least" 174 members. (10/24/25 Semones Decl. ¶ 3.)  The court concludes, therefore, that the preponderance of the evidence demonstrates the class includes 174 members, rather than 350.  Thus, as Boeing states in its response to the motion to remand, the total economic damages at stake based on a 174-member class is $2.088 million, which is less than half of its original $4.2 million estimate.  (MTR Resp. at 23-24.)

4.      Injunctive Relief

In addition to seeking economic damages, Mr. Leonard also seeks "equitable relief, including but not limited to injunctive or declaratory relief to prevent future implementation of discriminatory policies and to require compliance with the WLAD[.]" (Compl. at 8-9.)  Boeing asserts that the value of such an injunction is at least $4.2 million if the calculation is based on a 350-member class, or at least $2.088 million if based on a 174-member class.  (Not. of Removal ¶¶ 26-27; MTR Resp. at 21, 23-24.) To support this valuation, Boeing relies on evidence that similar ratification bonuses have appeared in past CBAs and represents that it intends to propose a similar bonus during

ORDER - 9

CBA negotiations in the future.  (MTR Resp. at 20-21 (citing Marx Decl. (Dkt. # 3) ¶ 4).)  Thus, according to Boeing, Mr. Leonard's requested injunction would result in costs equal to the economic damages at stake in this case for each CBA negotiated in the future.  (*Id.* at 21-22.)

Mr. Leonard asserts that the court should not credit Boeing's estimate because Boeing cannot unilaterally continue offering the bonus absent the union's agreement, and it is "wildly speculative" to assume that the union would agree to an unlawfully discriminatory bonus in a "hypothetical future collective bargaining agreement[]."  (MTR at 7-9; *see also* MTR Reply at 9-10.)  The court agrees with Mr. Leonard that Boeing's assumption that the IAMAW would agree to the same bonus provision in the future is speculative and unreasonable.  Furthermore, courts in the Ninth Circuit have held that where the plaintiff seeks an order requiring the defendant to comply with state law, the prospective costs of complying with the injunction are incidental costs that are not properly included in the amount in controversy calculation.  *See, e.g.*, *Ramirez v. HMS Host USA, Inc.*, No. 5:12-CV-04683 EJD, 2012 WL 6000565, at *5 (N.D. Cal. Nov. 30, 2012) ("[T]he costs associated with future compliance with California's labor laws are incidental costs that are not to be included in an amount in controversy analysis.") (citation omitted); *Lopez v. Source Interlink Companies, Inc.*, No. 2:12-CV-00003-JAM, 2012 WL 1131543, at *5 (E.D. Cal. Mar. 29, 2012) ("Plaintiff's injunction will not create the costs associated with compliance because, if Plaintiff's allegations are true, Defendant is supposed to comply with state law regardless.").  *See also In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) ("[T]he test for determining the amount in

ORDER - 10

controversy . . . is the pecuniary result to either party which the judgment would *directly* produce[.]")) (emphasis added).  As a result, the court declines to include Boeing's estimated "cost of merely complying with the law" in the amount in controversy.  *Lopez*, 2012 WL 1131543, at *5.

      5.      Attorneys' Fees

Boeing asserts that the amount of attorney's fees at issue is 25% of the combined total of damages and the cost of injunctive relief.  (Not. of Removal ¶¶ 28-30; *see* MTR Resp. at 22-24.)  Mr. Leonard argues that this estimate is speculative and that the attorneys' fees should instead be based on a lodestar calculation rather than a percentage of the anticipated recovery.  (MTR at 9-11.)  The court agrees with Boeing that it is appropriate to use a 25% benchmark to estimate attorneys fees in this matter.

In *Fritsch v. Swift Transportation Company of Arizona*, the Ninth Circuit declined to hold that it is per se reasonable to include attorneys' fees of 25% of the total recovery in the amount in controversy, reasoning that circuit precedent requires the defendant to prove the amount of attorneys' fees at stake by a preponderance of the evidence.  899 F.3d at 796.  The Ninth Circuit clarified, however, that it did "not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate."  *Id.* at 796 n.6.  Just two years later, the Ninth Circuit concluded that a reasonable estimate of attorneys' fees may be based on fees sought by plaintiff's counsel in similar cases in the past.  *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (finding that, where removing defendant provided evidence plaintiffs' counsel sought a 35% fee award

in a similar case, it was reasonable to assume counsel would seek fees equal to 25% of the total recovery if the plaintiffs prevailed).

Here, Boeing submits evidence that Mr. Leonard's attorney Steven A. Toff requested attorneys' fees of 25% of the common fund in a recent wage-and-hour settlement in King County Superior Court. (*See* 10/24/25 Waxman Decl. (Dkt. # 22) ¶ 2, Ex. 1 ("*Bradley* Preliminary Approval Motion") at 10, 21, 27.) Mr. Leonard protests that it is not reasonable to base an attorneys' fee estimate on the fees requested in a common fund settlement because this case involves the WLAD, which is a fee-shifting statute. (MTR Reply at 11.) The court is not convinced because the settlement Boeing relies on also involved fee-shifting statutes providing for an award of attorneys' fees to the prevailing plaintiff. (*See Bradley* Preliminary Approval Motion at 2 (listing Washington laws at issue)); *see* RCW 19.86.090 (authorizing attorneys fees under the Washington Consumer Protection Act); RCW 49.46.090 (same for the Washington Minimum Wage Act); RCW 49.52.070 (same for the Washington Wage Rebate Act); RCW 49.12.150 (same for the Washington Industrial Welfare Act). Therefore, the court concludes that it is reasonable to estimate attorneys' fees in this matter as 25% of the damages at stake, or $522,000.

6.    Summary

In sum, the court concludes that Boeing has established, by a preponderance of the evidence, that the damages at stake in this action total $2.088 million, and that $522,000 is a reasonable estimate of attorneys' fees. Thus, the court finds that the total amount in controversy is $2.61 million, which falls far short of the $5 million threshold required for

ORDER - 12

jurisdiction under CAFA.  Therefore, the court must consider whether it has federal question jurisdiction based on § 301 preemption.

**B.    § 301 Preemption**

In general, the "presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "Under the corollary to that rule, however, a state [] law claim will be converted into one stating a federal claim where the preemptive force of a federal statute is so extraordinary that it displaces any state law claim in the area." *Id.*

Although Mr. Leonard raises only state-law claims in his complaint, Boeing asserts that the court nevertheless has federal question jurisdiction over this matter because Mr. Leonard's WLAD claims are "completely preempted" by § 301 of the LMRA, which provides, in relevant part, that

> [s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  "Once an area of state law has been completely pre-empted [by § 301], any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (citation omitted).  Section 301 preempts state-law claims only where the claim

(1) "arises entirely from" a CBA or (2) "requires interpretation of" the CBA. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1088 (9th Cir. 2025) (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018) (en banc)). "When a plaintiff's state law claim does *not* arise from a collective bargaining agreement or require interpretation of that agreement, a defendant cannot, by invoking the agreement as a defense, 'transform the action into one arising under federal law.'" *Id.* at 1089 (quoting *Caterpillar*, 482 U.S. at 399).

Boeing argues that Mr. Leonard's claims are preempted by § 301 because they are based on a right created by the CBA—that is, the right to the ratification bonus—and are "inextricably intertwined" with and dependent on the interpretation of provisions of the CBA governing the ratification bonus. (MTR Resp. at 5.) Mr. Leonard counters that the right at issue is the right to be free from discrimination in employment, which a creation of state law rather than the CBA, and that his claims can be resolved without the need to interpret the CBA. (MTR at 13-22; MTR Reply at 1-4.) The court agrees with Mr. Leonard.

At the first step of the § 301 preemption analysis, the court must determine whether the collective bargaining agreement is the "'only source' of the right the plaintiff seeks to vindicate." *Renteria-Hinojosa*, 150 F.4th at 1088-89 (quoting *Alaska Airlines*, 898 F.3d at 921). Here, although the ratification bonus is a product of the CBA, Mr. Leonard's WLAD disability discrimination claims are based on the right to be free from discrimination in employment, which is conferred by Washington law, rather than by the CBA. *See Miglio v. United Airlines*, No. C13-0573RAJ, 2014 WL 1089285, at *4 (W.D.

Wash. Mar. 17, 2014) (so holding in analyzing preemption of a WLAD disability discrimination claim under the Railway Labor Act ("RLA")[6]); *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1009 (9th Cir. 2002) (holding that rights established by the WLAD are non-negotiable and are separate from the CBA).  Thus, the court can easily conclude that the CBA is not the "only source" of the rights at issue in this case.

Because Mr. Leonard's asserted rights do not arise entirely from the CBA, the court must proceed to the second step of the preemption analysis and ask "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Alaska Airlines*, 898 F.3d at 921. "'Interpretation' is construed narrowly; it means something more than consider, refer to, or apply." *Id.* at 922 (internal quotation marks omitted).  Accordingly, "claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).  Neither "look[ing] to the CBA merely to discern that none of its terms is reasonably in dispute" nor "the simple need to refer to bargained-for wage rates in computing [a] penalty" is enough to warrant § 301 preemption.  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Livadas*, 512 U.S. at 125).  Simply put, "when the meaning of contract terms is not the subject of dispute, the bare fact that a

---

[6] Because RLA preemption is "virtually identical" to LMRA § 301 preemption, courts in the Ninth Circuit cite cases involving both statutes when determining the scope of § 301 preemption.  *See, e.g., Alaska Airlines*, 898 F.3d at 913-14, 920-28 (citing both LMRA cases and RLA cases when analyzing whether the RLA preempted a claim brought under the Washington Family Care Act).

ORDER - 15

[CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 125 (citation omitted).

Boeing raises several arguments supporting its contention that Mr. Leonard's claims are preempted. The court finds none of them persuasive.

First, Boeing argues that the claim is preempted because it challenges "the lawfulness of a term in the CBA[.]" (MTR Resp. at 6-7.) This argument is foreclosed by the Ninth Circuit's en banc decision in *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) (en banc), which also involved a legal challenge to a provision of a CBA. There, the en banc court had no trouble determining that a claim alleging that a CBA provision prohibiting flight attendants from using banked vacation time to care for a sick child violated the Washington Family Care Act was not preempted. *See Alaska Airlines*, 898 F.3d at 915, 926-27. Notably, Boeing relies on cases from other circuits that pre-date *Alaska Airlines* to support this argument (*see* MTR Resp. at 6-8) and cites the precedential *Alaska Airlines* decision nowhere in its brief (*see generally id.*).

Second, Boeing asserts that the court must interpret the term "active payroll" as used in Letter of Understanding No. 32 to resolve Mr. Leonard's WLAD claims. (MTR Resp. at 9.) "Active payroll," however, has already been defined through binding arbitration between Boeing and IAMAW, and neither party in this litigation seriously challenges that definition. (*See* Lindauer Award at 10; *see also* MTR at 16-17; MTR Resp. at 9; MTR Reply at 2.)

Third, Boeing contends that the court must "determine whether and to what extent the CBA provides non-disability leave for more than 90 days to determine [whether] the

CBA's terms treated non-disabled employees more favorably." (MTR Resp. at 9; *see also id.* at 12 (arguing that the court must interpret the CBA to determine whether the ratification bonus disproportionately affected employees with disabilities, which "necessarily includes evaluating whether [CBA provisions governing leaves of absence] had a similar effect on employees on other types of leave").) But the court need not *interpret* the CBA to identify the types of leave available to union members; instead, it need only *refer* to the relevant terms. (*See id.* at 9 (noting that the CBA "provides leave for union business, and personal leave, and addresses absences due to strikes or lockouts").) As the Ninth Circuit explained in *Alaska Airlines*:

> The claim of course *relies on* the terms and conditions of employment established by the CBA, in that [the plaintiff's] banked vacation days exist only by virtue of her having earned them in accordance with a workplace policy incorporated in the CBA. And the claim may be aided by *reference to* certain other CBA provisions, such as those making banked vacation immediately available for exchange, personal medical leave, maternity leave, bereavement leave, or cash-out. But reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment.

*Alaska Airlines*, 898 F.3d at 927 (emphasis in original and internal citations omitted). So too here. Although Mr. Leonard's claims *rely* on the bonus policy set forth in Letter of Understanding No. 32, and although they may be aided by *reference to* CBA provisions governing leaves of absence, there does not appear to be serious disagreement about the meaning or application of any relevant CBA term that would require the court's interpretation. And as Mr. Leonard points out in his opposition to Boeing's motion to dismiss,

ORDER - 17

> To calculate [whether a disproportionate number of workers denied a ratification bonus were disabled], one only needs a headcount of how many people did not get the bonus because they were on a nonmilitary leave of more than 90 days, and a headcount of how many of those people were on leave because of a disability – which is determined by identifying the people who were out on leave for medical reasons and then applying WLAD's definition of disability to each one.

(MTD Resp. at 8.)  The court agrees that determining whether disabled employees were disproportionately affected by the bonus policy is a fact question that does not require interpretation of the CBA.

Fourth, Boeing argues that Mr. Leonard's claims depend on the CBA because the court will "need to examine the intent of Boeing and Leonard's union in negotiating the [ratification bonus] to assess whether the denial of Leonard's bonus was based on 'legitimate, non-discriminatory reasons[,]'" which it asserts "can only be determined by interpreting the CBA provisions at issue."  (MTR Resp. at 10.)  This argument, however, "[r]eli[es] on the CBA as an aspect of a defense[,]" which is "not enough" to establish preemption.  *Burnside*, 491 F.3d at 1060; *Renteria-Hinojosa*, 150 F.4th at 1089 ("[A] defendant cannot, by invoking the agreement as a defense, 'transform the action into one arising under federal law.'") (citation omitted); *see Sellar v. Woodland Park Zoological Soc'y*, C23-0627TL, 2023 WL 5425490, at *6 (W.D. Wash. Aug. 23, 2023) (rejecting employer's argument that plaintiff's state-law claims were preempted because whether the employer had legitimate nondiscriminatory reasons for its conduct required interpretation of the CBA).

Finally, Boeing argues that Mr. Leonard's WLAD claims "undermine the purpose of LMRA preemption" because "the CBA—including the ratification bonus [Mr.

Leonard] challenges—applies to employees across multiple states." (MTR Resp. at 15-16.) It complains that "[n]o single state can legitimately invalidate, rewrite, or modify the terms of a multistate bargaining agreement" and asserts that Mr. Leonard's WLAD claims must be preempted to "prevent the disruptive consequences of allowing individual contract terms to carry different meanings under state and federal law." (*Id.*) As Mr. Leonard points out, however, *Alaska Airlines* involved the application of Washington law to a CBA that covered flight attendants in multiple states. (*See* MTR Reply at 5.) The court held that a claim based on a multistate CBA provision that allegedly violated Washington state law was not preempted. *Alaska Airlines*, 898 F.3d at 927. In doing so, the court made clear that the principle of preemption "does *not* provide for, nor does it manifest any interest in, national or systemwide uniformity in substantive labor rights." *Id.* at 919 (emphasis in original). To the contrary,

> [s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states, and will naturally result in labor standards that affect workers differently from one jurisdiction to the next, even when those workers fall under a single labor agreement.

*Id.* at 919-20 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262-63 (1994)). Thus here, as in *Alaska Airlines*, the mere fact that Boeing's CBA covers employees in multiple states does not bar Mr. Leonard from bringing his state-law claims.

In sum, because the rights at issue in this case do not arise solely from the CBA, and because Mr. Leonard's claims can be resolved without the need to interpret the CBA, Mr. Leonard's WLAD claims are not preempted under § 301 and do not give rise to

federal question jurisdiction.  And, because Boeing has failed to establish the requisite amount in controversy, the court cannot exercise CAFA jurisdiction over this action. Consequently, the court lacks jurisdiction over this case and must remand it to King County Superior Court.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Leonard's motion to remand (Dkt. # 19), GRANTS in part Boeing's motion for judicial notice (Dkt. # 12), and DENIES Boeing's motion to dismiss (Dkt. # 11) as moot.  This case is REMANDED to King County Superior Court.

Dated this 6th day of February, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 20